UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

WAYNE EARL LAFOUNTAIN,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.
_____/

Case No. 1:20-cv-1221

Honorable Janet T. Neff

# **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2241.[1] Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After

---

[1] Although Petitioner brings his action under 28 U.S.C. § 2241, habeas corpus actions brought by "a person in custody pursuant to the judgment of a State court" are governed by 28 U.S.C. § 2254. *Id.* Section 2254 "'allows state prisoners to collaterally attack either the imposition *or* the execution of their sentences[.]'" *Bailey v. Wainwright*, 951 F.3d 343, 348 (6th Cir. 2020) (Stranch, J., dissenting) (quoting *Allen v. White*, 185 F. App'x 487, 490 (6th Cir. 2006)); *see also Rittenberry v. Morgan*, 468 F.3d 331, 336-37 (6th Cir. 2006). As a consequence, Petitioner's filing is subject to all of the requirements that apply to a petition filed under § 2254. Moreover, under the applicable rules, § 2241 petitions by state prisoners are subject to the rules governing § 2254 petitions. *See* Rule 1(b), Rules Governing § 2254 Cases.

undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because the claims Petitioner seeks to pursue have been procedurally defaulted.

## Discussion

### I.     Factual allegations

Petitioner Wayne Earl LaFountain is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility in Carson City, Michigan. Following a jury trial in the Jackson County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On September 5, 1984, the court sentenced Petitioner to 45 to 70 years' imprisonment. Petitioner has already challenged that conviction and sentence by way of a habeas petition filed in this Court. *LaFountain v. Caruso*, No. 2:93-cv-188 (W.D. Mich.). The present petition challenges the determination of Petitioner's guilt for threatening behavior and assault and battery as reflected in a May 14, 2018 misconduct hearing report. (Misconduct Hr'g Report, ECF No. 3-1, PageID.85-86.) It is Petitioner's fourth habeas petition challenging a prison disciplinary proceeding. *See LaFountain v. Howes*, No. 1:07-cv-264 (W.D. Mich.); *LaFountain v. Balcarcel*, No. 1:09-cv-826 (W.D. Mich.); *LaFountain v. McKee*, No. 1:10-cv-783 (W.D. Mich.).

Petitioner contends that he was denied due process in connection with a major misconduct disciplinary hearing on May 14, 2018. But not all MDOC prisoners are entitled to due process in connection with prison disciplinary proceedings.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that

2

one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Michigan has employed different behavior "credit" schemes over the last few decades. Prisoners "serving a sentence for a crime committed before April 1, 1987, and who [have] not been found guilty of a major misconduct or had a violation of the laws of this state recorded against [them] shall receive a reduction from his or her sentence . . . ." Mich. Comp. Laws § 800.33. The longer the prisoner is incarcerated, the more credit he or she receives for each month of "good time." For a prisoner like Petitioner, who has been incarcerated for 20 years or more, the credit is 15 days per month. *Id*.

Petitioner received a significant sentence duration penalty as a result of the hearing officer's determination that Petitioner was guilty of the misconduct: Petitioner's earliest release date was moved from September 8, 2019, to November 22, 2020, and his maximum discharge date

3

was moved from March 25, 2025, to September 21, 2026.  (Time Review & Disposition Forms, ECF No. 3-1, PageID.119-120); *see also* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=171248 (visited Dec. 29, 2020).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted for crimes occurring after April 1, 1987.  Mich. Comp. Laws § 800.33(5).  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id*. at 440.  Building on this ruling, in *Taylor v. Lantagne,* 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time, Mich. Comp. Laws § 800.34, a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.

Petitioner, however, who was convicted before 1987, is entitled to some due process protection for major misconduct hearings because a finding of guilt could, and did, impact the duration of his sentence.  In the seminal case of *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary

4

board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. The right to call witnesses or present evidence, however, is not absolute. *Id.* at 566. The United States Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.* Petitioner claims he was deprived of due process in connection with his disciplinary proceeding because the hearing officer refused to consider Petitioner's proffered evidence that the misconduct reports were false and issued in retaliation for Petitioner's filing of grievances. Petitioner raised that challenge at the hearing and in his request for rehearing. (Req. for Reh'g, ECF No. 3-1, PageID.99-101.)

Petitioner appealed the resolution of his prison misconduct proceedings in the Ingham County Circuit Court. Petitioner failed to file a brief in accordance with the Michigan Court Rules. The circuit court issued a notice of intent to dismiss on December 27, 2018, directing Petitioner to correct the deficiency within 14 days. Petitioner did not comply. The court dismissed the appeal. (Ingham Cnty. Cir. Ct. Order, ECF No. 3-1, PageID.76-77.)

Petitioner filed an application for leave to appeal the circuit court's order in the Michigan Court of Appeals. By order entered August 14, 2019, the court of appeals denied leave in a form order. (Mich. Ct. App. Order, ECF No. 3-1, PageID.75.) Petitioner then sought leave to appeal in the Michigan Supreme Court. That court denied leave in a form order dated February 4, 2020. (Mich. Order, ECF No. 3-1, PageID.74.)

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.  Discussion

Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*,

526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at 277-78; *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993). With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

Petitioner may have presented the substance of his federal constitutional claims to the state courts; however, because he never filed a brief in the Ingham County Circuit Court,

8

despite the court's order to do so, he failed to present the substance of his issues in a procedurally appropriate manner. Failure to exhaust state court remedies is only a problem if a state court remedy remains available for petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to Petitioner, his failure to exhaust does not bar relief, but the claim is procedurally defaulted. *Id.*

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

Petitioner does not dispute that he failed to comply with the Michigan Court Rule 7.111(A) requirement that he file a brief. That rule specifies the penalty for failure: "the appeal may be considered abandoned, and the circuit court may dismiss the appeal . . . ." Mich. Ct. R. 7.111(A)(1)(b). The circuit court provided notice that the certified record had been filed in the court, thereby triggering the briefing deadline. The circuit court notified Petitioner that failure to file the brief would result in dismissal, as contemplated by the rule. Petitioner did not timely file his brief and the court considered the appeal abandoned and dismissed the appeal.

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803. The subsequent form orders of the Michigan Court of Appeals and Michigan Supreme Court do not explain why leave to appeal was denied. The court of appeals stated that Petitioner's application lacked merit—but does not indicate whether it lacked merit because of his circuit court procedural default or otherwise—and the supreme court stated that it was not persuaded that the questions presented should be reviewed. (Mich. Ct. App. Order, ECF No. 3-1, PageID.75; Mich. Order, ECF No. 3-1, PageID.74.) The *Ylst* Court explained the proper approach to such formulary orders:

> If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

*Ylst*, 501 U.S. at 803. *See also Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (holding that, in reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst*, 501 U.S. 797, and "look through" the unexplained order to the last reasoned decision of the state court); *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010) (same). Therefore, this Court concludes that Petitioner failed to comply with a state procedural rule, that the state courts enforced that rule to bar the claim, and that the procedural bar is an adequate and independent ground that forecloses federal habeas review of Petitioner's federal constitutional claims.

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal

10

habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House,* 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror—or in this case, hearing officer—would have found petitioner guilty. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has not established cause for his failure to file a circuit court appeal brief. He has also failed to provide new reliable evidence regarding his actual innocence of threatening behavior or assault and battery.[2] Therefore, this Court's review of Petitioner's habeas claims is barred by his procedural default.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

---

[2] The Court notes that Petitioner's contention that the testimony of his victims was false does not constitute new and reliable evidence. Moreover, Petitioner's contention that the misconduct reports were retaliatory does not, separate and apart from his claim that the reports were false, establish his innocence. Indeed, misconduct reports may be retaliatory and true. *Thomas v. Eby*, 481 F.3d 434, 441-442 (6th Cir. 2007). In that circumstance, the retaliatory motivation might give rise to a First Amendment retaliation claim under 42 U.S.C. § 1983, but it would not render a misconduct conviction constitutionally infirm and vulnerable to attack under 28 U.S.C. §§ 2241 or 2254.

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court concludes that Petitioner has failed to demonstrate that his sentence was extended in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: January 4, 2021       /s/ Janet T. Neff
　　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　　United States District Judge